(D'Homergue *v.* Morgan.)

---

[PHILADELPHIA, JANUARY 2, 1838.]

## D'HOMERGUE *against* MORGAN and Others.

### IN ERROR.

1. In assumpsit on a contract alleged to have been made with the plaintiff, a native of France, by an agent of a society, of which the defendants were members, upon which contract the plaintiff came over to this country, to teach the art of making sewing silk, it was *held* that a deposition of a third person, stating certain conversations between the said agent, and the plaintiff and the deponent, relating to the situation and prospects of the plaintiff, ought to have been admitted in evidence; but the Judge having, at the conclusion of other testimony, offered to admit parts of the deposition in evidence, and the counsel for the plaintiff not offering the deposition at all in evidence after the offer of the Judge, it was *held* that he could not assign this for error.

2. On the trial of the same cause, the plaintiff's counsel offered in evidence a certificate of the Franklin Institute, setting forth that they had awarded to the plaintiff a silver medal, "as a testimonial of the satisfaction they had experienced from the silks exhibited by him." *Held* that the certificate was properly rejected.

3. It was also *held* that a witness examined on behalf of the plaintiff, could not be asked whether he was "present when a bill relative to the employment of the plaintiff, by the United States, was before the House of Representatives of the United States, and what then took place," nor whether he was "present at a conversation between the envoy of a foreign government and the plaintiff, at which the. former made offers to the latter, to induce him to go over to his country, to teach the art of reeling silk," &c.

THIS was a writ of error to the District Court for the City

(D'Homergue v. Morgan.).

and *County of Philadelphia, to remove the record of an [*27]
action on the case brought by John D'Homergue against
Benjamin R. Morgan, Joseph Hemphill, Mathew Carey, Nathan
Bunker, Florimond Dusar, Daniel J. Rhodes, Joseph P. Grant,
James Mease, Joseph Ripka and Isaac Macauley, "associated as
the Pennsylvania Society for promoting the culture of the Mul-
berry tree, and the raising of Silk-worms."

The action was brought in the court below, to December Term,
1829.　The plaintiff declared in assumpsit on a contract alleged
to have been made with him, at ·Marseilles, in France, by the
defendants, through one J. W. Morse, their duly authorized
agent, that if he, the plaintiff, would come out to Philadelphia,
there to be employed by the defendants in teaching the art of
making sewing-silk, &c., they would pay him a reasonable com-
pensation for his services.　There was a second count for work
and labour done, in pursuance of the contract stated in the first
count.　The pleas were *non assumpserunt* and payment with
leave, &c.

On the trial before Coxe, J., on the 9th day of February, 1835,
it appeared, that in the year 1829, the defendants empowered
J. W. Morse, then about to sail for the south of France, to em-
ploy for them a person skilled in the manufacture, &c., of silk,
and to send such person out to them in this country, to teach
them the art, and to make sewing-silk, &c. for them.　The agent,
Morse, after much search for a competent person, discovered and
employed the plaintiff, and sent him out to the defendants.　No
terms were fixed between him and the plaintiff.　Upon the plain-
tiff's arrival in Philadelphia, he was received by the defendants,
and made an offer of what he was content to accept as compen-
sation, and the defendants made an offer of what they were con-
tent to pay.　They differed widely: the plaintiff demanded a
salary and emolument proportioned to the value of his services,
as the teacher of a new and important art; while the defendants
offered him the wages of a common operative.　Much negotiation
took place, which finally broke off, and this action was instituted
to recover damages of the defendants, for the breach ·of their
contract to employ the plaintiff.　Two questions occurred—
1. Was there a contract to employ the plaintiff?　2. If such
contract were in fact made, then what amount of compensation
were the defendants bound to make to the plaintiff for his ser-
vices?　The plaintiff contending for a liberal salary—the de-
fendants for a journeyman mechanic's wages.

On the opening of the case, the plaintiff's counsel offered in
evidence the deposition of one George A. O'Brien.　The defend-
ants' counsel objected to the whole of the first page of the MS.,
and the first sixteen lines of the second page; at the same time

(D'Homergue *v.* Morgan.)

offering to produce, under a notice from the plaintiff's counsel to produce the *same, a certain letter of instructions to J. W. Morse, referred to in the deposition. The Judge sustained the objection, and refused to permit the above-mentioned parts of the deposition to be read. The deposition was as follows:

"George A. O'Brien of the City of Philadelphia, sea captain, a witness produced, sworn and examined on the part of the plaintiff in the above cause, doth depose and say,

That he knows Mr. John D'Homergue, the plaintiff; that he was introduced to him at Marseilles as a passenger who was to go by this deponent's brig, the Mary, to Philadelphia, which was then the port of her destination; this deponent was informed by Mr. Morse, the gentleman who introduced the plaintiff to him, that the said plaintiff was going to the United States at the request of a silk society, of which Messrs. Carey, Camac, Mease, Morgan and others, were members; there were other names mentioned. Mr. Dusar's was one. Their names were signed to a letter of instructions to Mr. Morse, requesting him to send them a person who was well acquainted with silk manufactures, by the first opportunity. This letter was shown to deponent, who recognised the signature of Mr. Carey, from having seen it before. The conversation was carried on between Mr. D'Homergue and Mr. Morse in the French language, which this deponent does not understand; but at the same time, and in the presence of plaintiff, Mr. Morse said that plaintiff was sure of making his fortune in the United States in a few years. Some discussion took place at the same time between Mr. Morse and this deponent as to the rate of passage to be paid; Mr. Morse said that he would not miss the opportunity of sending the plaintiff by deponent's vessel direct to Philadelphia on any account; that he had had much difficulty in getting him to go, and that if he went through New York, some other silk society would get possession of him, to the prejudice of the Pennsylvanian Society. This conversation was had three or four days before we sailed, which was on the 22d of March, 1829; a Sunday. We arrived in Philadelphia about the middle of May. Mr. Morse said that the plaintiff was the editor of a newspaper in Marseilles; that he had been persuaded with great difficulty to go, and that he wished him to start immediately, for fear of his changing his mind. Mr. Morse undertook to pay $60 for Mr. D'Homergue's passage, and to lay in provisions for him. The plaintiff was taken on board as a cabin passenger. I received him upon Mr. Morse's recommendation. My wife was with me, and I was therefore particular about the person that should stay in the cabin, but

.(D'Homergue v. Morgan.)

Mr. Morse assured me that he was a gentleman of respectability, and well-bred. He always behaved as a gentleman during the passage. Mr. D'Homergue was well supplied with good clothes; and as they were too good to be worn at sea, I asked him in rainy weather, when he came upon deck, to use my tarpaulin jacket to save his own. He *never asked me to lend him any clothes, and I had trouble to prevail upon him to use my jacket. [*29]

[Here ends the sixteenth line of the second page, being the rejected part of the deposition.]

I never told any body here that I had been obliged to lend him clothing, nor have I ever said any thing to any body to induce him to believe that the plaintiff had been in want of clothes. I never had any communication with Mr. Dusar, except once for five minutes in the Coffee-house, when I asked him for the passage-money; he said it should be paid when the society had elected its treasurer and made its arrangements; that Mr. D'Homergue had made exorbitant demands. Mr. Morse, with whom I transacted the business at Marseilles, is a very respectable man, largely engaged in business at that port. This deponent is by profession a sea-captain, and will sail shortly from the port of Philadelphia."

Being cross-examined, the deponent says :—" Mr. D'Homergue had no trunk, chest or box, to my knowledge; he showed me none ; reported none to me, and I entered none for him. If he had any I should have seen it. I believe he kept his wardrobe in his berth. I did not read the letter which Mr. Morse had, or any part of it. The plaintiff had no funds that I know of at all. I think I saw about ten francs in his possession. In the conversation I referred to with Mr. Dusar, he told me the society had been perfectly willing to make Mr. D'Homergue an allowance for services, and stated the amount of wages which they had offered him. I thought the offer perfectly fair."

Being re-examined on the part of the plaintiff, he says—" That he does not now remember what Mr. Dusar stated to him as the amount offered by the society to Mr. D'Homergue, but if it was at the rate of seven dollars a week, he would by no means have considered it fair. The conversation with Mr. Dusar occurred about six days after the plaintiff's arrival in Philadelphia. This deponent is no judge of the value of plaintiff's services, but he thinks that a common labouring man would earn seven dollars a week in France even ; this deponent has paid as much to labourers at Marseilles. This deponent's arrival at Philadelphia was on the 19th of May. Plaintiff had three coats that deponent saw, two black and a blue—at least three pair of cloth pantaloons, and other clothing. His cloth clothes were kept in a spare chest of

(D'Homergue *v.* Morgan.)

the steward; it was his linen that was kept in the berth.  Mr.
D'Homergue may have had other money without this deponent's
knowing it, as he never made it his business, or thought it proper
to examine."

The plaintiff's counsel then read in evidence the following
letter from J. W. Morse, the defendants' agent, to F. Dusar, one
of the defendants.

[\*30]                      \*" Marseilles, 21st March, 1829.

" Dear Sir,—Since I last had the pleasure of addressing you
by the Brig Sophia, I have succeeded in finding a person which
I believe will answer your purpose, from the different examina-
tions he has undergone before me, by persons perfectly ac-
quainted with the manufacture of sewing-silk, whom I called
upon for the express purpose; they have informed me that his
answers to all their inquiries, so far as the making of sewing-silk,
were perfectly satisfactory.   It is very difficult, indeed, to find a
person who possesses a knowledge of the reeling, and the differ-
ent processes before being made into sewing-silk, as it is done by
four or more persons, who have each their particular part, and
who continue for years doing nothing else ; the women who reel,
do nothing but reel, and therefore it is difficult to find a man who
is acquainted with this branch of the business.   I have made ap-
plication through the medium of several respectable silk-mer-
chants here, at three of the manufacturing towns in the neigh-
bourhood, but without success.   It appears it is not the first time
that application has been made for the same object.   Mr. Jn.
D'Homergue of Nismes, the above-mentioned person, appears to
be a man of talent, and as far as I can ascertain, fully competent
of making sewing-silk, having been brought up in the business,
his father being himself a manufacturer at Nismes.   I have re-
presented to him the inutility of his going to America, should he
not consider himself thoroughly acquainted with the business ; he
says he is perfectly willing to undergo, on his arrival in the
United States, any examination or proof the society may think
proper to demand of him.   Should he answer your purpose, and
the society feel disposed to send for either men or women manu-
facturers, as he is a native of Nismes, and well acquainted there,
I have no doubt, he being in the United States, would induce
them to go there sooner than any argument I could make use of.
As it regards the machine for tearing the useless cocoons, Mr.
D'Homergue is acquainted with the manner in which it is con-
structed, and consequently it can be made in the United States.
I send you by Mr. D'Homergue, three tin boxes, containing 1
oz. white silk worms eggs, and 2 oz. of the yellow, and also 3

(D'Homergue v. Morgan.)

oz. of white mulberry seed; this is all I could procure. I intend this summer to get some of the best quality of seeds and send to you. As it regards the payment of the passage for Mr. D'Homergue, I have agreed with Capt. O'Brien to pay him fifty dollars, and it to be left to be settled on the arrival of the vessel at Philadelphia, by you and Mr. Pratt, who is owner of the brig. I made this arrangement, thinking Mr. P. when informed of the object of his coming to the United States, would not charge for his passage. Enclosed I send you an account for the stores, &c. furnished, the amount of which you will please pay to Mr. Saml. M. Stewart, who will call upon you for the amount. Without any thing else of *consequence to communicate, and [*31] hoping what I have done may meet your approbation,

Remain, very respectfully,<br>Your ob't se'vt,<br>J. W. MORSE."

The plaintiff's counsel then offered again the deposition of O'Brien, parts of which were again objected to, and excluded by the court; whereupon the plaintiff's counsel excepted to the decision of the court.

A letter from certain of the defendants, who were officers of the society, to the plaintiff, in answer to a letter of remonstrance and complaint, addressed to them by him, was then read; and the letter of the plaintiff, to which it was a reply, was also read. Both letters contained remarks upon the circumstances under which the plaintiff was induced to come to this country, and in respect to his capacity and prospects.

The deposition of O'Brien was then again offered, and in like manner rejected, and the decision excepted to.

The plaintiff's counsel then read in evidence a certain publication in the daily newspapers, made at the instance of the society, and the reply of the defendant.

After other evidence had been given, not material to be stated here, the plaintiff's counsel, to prove the plaintiff's capacity as a manufacturer of silk, offered in evidence the following letter from the officers of the Franklin Institute to the plaintiff, and the defendants' counsel objected to the same; the judge sustained the objection, and the plaintiff's counsel excepted to the decision.

" Hall of the Franklin Institute,<br>Philadelphia, January 21st, 1832.

'The Franklin Institute of the State of Pennsylvania, for the promotion of the Mechanic Arts,' have at their Sixth Exhibition of Domestic Manufactures, held in this city on the 14th to 18th September, 1830, awarded to you a Silver Medal, as a testimo-

(D'Homergue *v.* Morgan.)

nial of the satisfaction they have experienced from the Silks exhibited by you.

In compliance with the instructions of the Franklin Institute, we have the pleasure of transmitting to you the said medal,

And remain,

very respectfully, your obed't serv'ts,

JAMES RONALDSON, *President.*

J. H. BULKLEY, *Rec. Secretary.*

To JNO. D'HOMERGUE, Philadelphia."

[*32]   *P. S. Duponceau, Esq., a witness for the plaintiff, being under examination, the plaintiff's counsel, to prove the plaintiff's capacity as a manufacturer of silk, put to the witness the following question—"Were you present when a bill relative to the employment of the plaintiff by the United States, was before the House of Representatives of the United States; and if you were, what did then take place?" And the defendants' counsel objected to the question. The judge sustained the objection, and the plaintiff's counsel excepted to the decision.

To the same witness, with the same object, the counsel of the plaintiff put the following question:—"Were you present at a conversation between the envoy of a foreign government and the plaintiff, at which the former made offers to the latter, to induce him to go over to his country, to teach the art of reeling silk from cocoons, and the making sewing-silk, in the year 1830?" And the defendants' counsel objected to the question. The judge sustained the objection, and the plaintiff's counsel excepted to the decision.

Further evidence was given, not material to the questions in error.

As the evidence was about to be closed, the judge told the plaintiff's counsel, that if the deposition of Capt. O'Brien were now offered in evidence by the plaintiff, he would admit parts of it, which would now be evidence, although not so at the time it was rejected. The deposition, however, was not again offered in evidence.

The jury found a verdict for the defendants, and the plaintiff's counsel took a writ of error, and assigned the following exceptions.

"1. That the judge rejected the first page, and the first sixteen lines of the second page of the deposition of George A. O'Brien, offered in evidence by the plaintiff; the same being competent evidence.

2. That the judge rejected the whole deposition of George A. O'Brien offered in evidence by the plaintiff; the same being competent evidence.

(D'Homergue *v.* Morgan.)

3. That the judge rejected the letter from James Ronaldson and J. H. Bulkley to the plaintiff, offered in evidence by the plaintiff, the same being competent evidence.

4. That the judge overruled the following question, which the plaintiff's counsel proposed to put to P. S. Duponceau, a witness for the plaintiff, viz.—"Were you present when a bill relative to the employment of the plaintiff by the United States, was before the House of Representatives of the United States, and if you were, what did then take place?" The same being a question which the plaintiff's counsel should have been permitted to put to the witness.

The case was argued by Mr. *C. Ingersoll* and Mr. *Ingraham* for the plaintiff in error; and by Mr. *J. R. Ingersoll* for the defendants in error.        [*33]

Gibson, C. J. delivered the opinion of the Court—

The plaintiff ought perhaps to have declared specially; but granting that assumpsit might be maintained on the agent's promise of employment, why was not every thing said by the agent in the plaintiff's presence, of prospects opened or pursuits abandoned, pertinent to the question of damages? In that view, at least, Captain O'Brien's deposition seems to have been admissible in the first instance. It certainly became so to rebut the exorbitance of the plaintiff's terms, considered in reference to his supposed condition; and the court, thinking that certain parts before excluded, had been rendered admissible by evidence from the other side, invited a repetition of the plaintiff's offer, which was declined. Then how was he injured? He was remitted to the circumstances in which he stood at the outset; and the fault committed in the first instance, seems to have been repaired. But it is supposed that perfect reparation admitted of nothing less than a reception of the deposition entire, while the remarks of the court indicated an admissibility of particular parts, and these without specification. Still we cannot say that a second attempt would not have proved entirely successful. Further discussion, which is due to every court when it is requested, might have led to an introduction of every part, or else a precise expression of opinion as to particulars, which would have enabled us to treat the judgment fairly, instead of reversing it for doctrine which was not held. But it is far from clear, that every particle of the deposition was unobjectionable; and, under the views that had been opened by the defence, to have given the benefit even of an argument on the separate admissibility of the parts, would have been an act of justice. The sum of the matter is, that a party is not deemed to have been injured by an abor-

tive offer of competent evidence, which has not finally been excluded; especially a party who declined a revision which would have placed him in circumstances as advantageous, as if the evidence were proposed, and objections made to it, for the first time. On the remaining bills of exceptions, it is sufficient to remark, that parliamentary predication of a fact, can give it no sanction that may supersede the ordinary appeal to the conscience; and that the unofficial assertions of a foreign minister, derive no title to judicial regard from his character. On the same footing stands the medal of the Franklin Institute. As a certificate of opinion in regard to the plaintiff's fitness and skill, of which that institution had not been made the arbiter—it was well rejected.

Judgment affirmed.

Cited by Counsel, 6 Wharton, 330.

